# SUPREME JUDICIAL COURT,

### JANUARY TERM 1873, AT BOSTON.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. HORACE GRAY, Jr.,
Hon. JOHN WELLS,                } Justices.
Hon. MARCUS MORTON,

---

## MIDDLESEX COUNTY.

### ATTORNEY GENERAL vs. JOSEPH F. SIMONDS & others.*

At a town meeting a person was chosen moderator without the use of the check list, in violation of the St. of 1863, c. 198; persons were voted for as selectmen, declared elected and sworn; other business was done; it was voted to adjourn for a week; and the moderator declared the meeting adjourned. At the adjourned meeting it was voted that, as the omission of the check list had rendered the election of the moderator of doubtful legality, a moderator should be chosen; a new moderator was accordingly elected with the check list; and the meeting then chose other persons as selectmen. *Held*, on an information in the nature of a *quo warranto* against the persons chosen selectmen at the first meeting, that they were not entitled to the office.

INFORMATION by the attorney general in the nature of a *quo warranto*, alleging that Joseph F. Simonds, Bradley C. Whitcher

---

* This case was submitted on briefs in June 1872, and was decided by all the judges.

**and** Charles M. Parker had usurped the office of selectmen of Lexington.

The case, as it appeared from the pleadings and an agreed statement of facts, on which it was heard by *Colt,* J., and by him reported for the consideration of the full court, was as follows :

The town meeting of Lexington was duly called for Monday, March 4, 1872, with a proper article in the warrant for the choice of town officers.   At the meeting the inhabitants were called to order by the town clerk, and proceeded to vote by ballot for a moderator, but no check list was used.   James Gould was declared chosen moderator, was sworn in by the town clerk, and acted as moderator of the meeting.   It was then voted to ballot for selectmen.   After counting the votes, the respondents were found to have the highest votes and were declared elected.   The other town officers were then voted for, and those having the highest number of votes were declared elected.   The check list was used in taking all the votes, except that for moderator.   Before the declaration of the vote for any of the other officers, the oath of office as selectmen was administered to the respondents in open town meeting, and the chairman of the board of selectmen for the previous year delivered to the respondent Simonds the books and papers of the selectmen.   It was voted to adjourn to March 11, and the moderator declared the meeting adjourned. The town had acted upon all the articles in the warrant.

At the adjourned meeting on March 11, the following vote was passed: " Whereas, in the election of moderator on Monday last the use of the check list, which is required by law, was inadvertently omitted, thereby rendering his election doubtful in point of legality, it is therefore voted that we now proceed to the choice of a moderator." Thereupon the clerk received the ballots of the inhabitants entitled to vote, using the check list in so doing, and Isaac N. Damon was declared chosen, and was sworn, and without public objection acted as moderator. The voters present then proceeded to pass a vote ratifying all that had been done at the former meeting, except the choice of officers; and, after a vote passed to choose three selectmen, Charles W. Hudson, R. W. Reed and L. S. Pierce were declared to be chosen by ballot, the

check list being used; and the oath of office as selectmen was administered to them.

The respondents ever since March 4 had claimed to act and had acted as selectmen. Such judgment to be entered in the case as law and justice might require.

*C. Allen,* for the attorney general.

*H. W. Paine & A. Cottrell,* for the respondents. 1. The election was conducted by a moderator *de facto,* and the action of the meeting being legal as affects the public and third parties, the respondents are officers *de jure. Sudbury* v. *Heard,* 103 Mass. 543. *Coolidge* v. *Brigham,* 1 Allen, 333. *Elliott* v. *Willis,* Ib. 461. *Fitchburg Railroad Co.* v. *Grand Junction Railroad & Depot Co.* Ib. 552. *The King* v. *Lisle,* Andrews, 163. *People* v. *Collins,* 7 Johns. 549. *Wilcox* v. *Smith,* 5 Wend. 231. *Matter of Mohawk & Hudson Railroad Co.* 19 Wend. 135, 145. *People* v. *Stevens,* 5 Hill, 616, 630. *Plymouth* v. *Painter,* 17 Conn. 585. *People* v. *Cook,* 4 Seld. 67. Brightly's Election Cases, 451.

2. The St. of 1863, c. 198, that "in the election of moderators of town meetings, held for the choice of town officers, the checklist shall be used," is directory, not mandatory. Great injury would ensue from holding otherwise. *Mussey* v. *White,* 3 Greenl. 290. *Striker* v. *Kelly,* 7 Hill, 9, 24. *Doughty* v. *Hope,* 3 Denio, 249. *People* v. *Peck,* 11 Wend. 604. *Matter of Mohawk & Hudson Railroad Co.* 19 Wend. 135. *People* v. *Brenham,* 3 Cal. 477. *Sprague* v. *Norway,* 31 Cal. 173. *Hisler* v. *Carr,* 34 Cal. 641. *McKinney* v. *O'Connor,* 26 Tex. 5. *McCraw* v. *Harralson,* 4 Coldw. 34. *State* v *Stumpf,* 21 Wis. 579.

3. The meeting of March 11 had no power to annul the election held on March 4, or to reconsider the vote by which the respondents were elected. The first meeting was as legal as the second, for the second was by adjournment from the first; and if the first day's organization was fatally defective, there was no power to act on the question of adjournment, and the whole proceeding was a nullity.

AMES, J. The respondents are actually exercising the office of selectmen of Lexington, with an apparent or *prima facie* right

to do so. The present suit is against them directly, for the purpose of testing the validity of their right to the office which they claim, and is the appropriate, if not the only, mode in which that question can be finally settled. *Frost* v. *Mayor of Chester*, 5 E. & B. 531. *Attorney General* v. *Salem*, 103 Mass. 138. Some of the authorities relied upon by the respondents are for this reason but remotely, if at all, applicable to the question in dispute.

The St. of 1863, *c.* 198, expressly requires that, in the election of moderators of town meetings held for the choice of town officers, the check list shall be used. At the meeting at which these respondents claim to have been chosen selectmen, the check list was not used. Whether the effect of this irregularity would have been, of necessity, to invalidate the subsequent elections or not, it was an informality which the town would undoubtedly have had a right to correct at the same meeting. If therefore, before the adjournment, any voter present at the meeting had called attention to the error, and had moved, for that reason and in order to correct the mistake, to proceed anew to the choice of a moderator, such a motion would have been proper, and such new choice of a moderator would have been regular and legal. Such a new choice of moderator would have been in substance the reconsideration of all that had been done while the meeting was without a legal moderator, and thereupon a new election of town officers would be proper and indeed necessary. The town, at the original meeting, could lawfully have said by its vote, that the person chosen irregularly, and without proper formalities, to act as moderator, was not the moderator, and could have treated all that was done, while he presided as such, as of no binding force or effect. This is what the town has undertaken to do.

The only question open to any serious doubt is whether the town could take this course at an adjournment of the original meeting. A regular and proper adjournment of a town meeting is a continuation of the same meeting. The respondents however insist that, if there was no legal moderator, with power to preside at the election of town officers, to receive and count the votes and declare the result, there was also no moderator who could put the question of adjournment, and declare the meeting

adjourned from the fourth to the eleventh of March ; in other words, that if the meeting was not sufficiently organized for the choice of town officers, it was not sufficiently organized for the purpose of adjournment.   But we do not consider this argument as having any legal foundation.   It is not at all unusual, and never has been supposed to be unlawful, for meetings of corporations to be adjourned for want of a quorum, without transacting any other business.   Such an adjournment might not be likely to occur in the case of a town meeting, but it is not difficult to suppose cases in which it might be convenient to the inhabitants of a town to postpone for a few days the entire business of the meeting, including the choice of a moderator.   There might be a failure to choose any person as moderator ; or a difficulty in ascertaining which of several candidates had been chosen.   However unlikely it may be that a meeting would be prevented by any such cause from advancing with the transaction of its business, it would not for that cause be incapacitated from action.   Until a moderator is legally chosen, the clerk is the proper presiding officer ; and if any voter should move an adjournment to a day certain, at any time after the clerk has called the meeting to order, we do not see why the meeting may not adopt the suggestion and vote accordingly, or why the clerk may not record the vote.   The vote to adjourn does not depend upon the election of the moderator ; and, if it may be adopted without being preceded by the election of such an officer, it cannot be said to be void and of no effect because the proposition is put to vote, and the result is declared, by a person who, without legal authority, but without objection, is permitted to act as the presiding officer for the time being.

. The meeting in this. case was regularly called for the fourth day of March, and the business which it then proceeded to act upon was transacted in such a manner that the votes and elections which had occurred were not binding upon the town.   But the meeting was not dissolved ; and the town saw fit, before finally dissolving the meeting, to confirm all the business that had been irregularly done, except the choice of officers, and upon that business they had a right to act *de novo*.   The fact that the re-

spondents had in the mean time taken the oaths of office does not remedy the irregularity of their election or impair the right of the town to correct the informality by a new and regular election.

The result then is, that the respondents have no valid title to the offices to which they claim to have been duly elected, and that *Judgment of ouster is to issue accordingly.*