## State *vs.* Robert H. Kearn *et als.*

An information of *quo warranto* was presented against all the members of a town council upon a ground common to them all.

*Held,* on demurrer, that there was no misjoinder, and that the information was properly drafted.

In *quo warranto* a justifying defendant must set out his title specially and prove it, otherwise the State without proof is entitled to judgment of ouster.

Under Pub. Stat. R. I. cap. 10, a town council, in counting votes and announcing the result, performs a ministerial duty.

An information in the nature of *quo warranto* is a civil proceeding in everything except form, and a court, in the absence of statutory authority, cannot on such an information impose a fine in addition to the judgment of ouster.

The statute, 9 Anne, cap. 20, authorizing a fine, does not seem to have been recognized in Rhode Island. *State* v. *Brown*, 5 R. I. 1, criticised.

Hence, when judgment of *ouster* was entered against the members of a town council who claimed office under an election which the court found to have been fraudulent, and who on the day the information was filed against them destroyed the ballots cast at such election, the court condemned the conduct of the respondents as clearly improper, but declined to add a fine to the judgment.

At an election for town councilmen enough fraudulent ballots were cast to affect the result. Rejecting these ballots, the court found that the respondents did not receive a majority of the votes cast.

*Held*, that a simple judgment of *ouster* should be entered.

QUO WARRANTO.

This was an information filed by the Attorney General on the relation of certain persons claiming to have been duly elected town councilmen of the town of Lincoln, against the respondents, who were " using and exercising the office of town councilmen." The information is as follows : —

*To the Honorable Supreme Court for the County of Providence :* —

Robert W. Burbank, of the city and County of Providence, Attorney General of the State of Rhode Island and Providence Plantations, who prosecutes for said State, in this behalf comes into this Honorable Court, and for said State, at the relation of James H. Andrew, Hector Schiller, Thomas Jordan, Edwin F. Hawkins, Frank X. Roberts, George W. Harris, and William E. Manchester, all of the town of Lincoln, in the County of Providence and said State, and all legally qualified electors of said town of Lincoln, and gives the court to understand and be informed that said town of Lincoln aforesaid is a municipal corporation in said County of Providence, and that within said town, pursuant to the provisions of the statutes of said State and of a legal vote of said town, there of right ought to be seven town councilmen of said town, to be elected in the manner in the statutes of said State specified, and in accordance with law ; that the said several places and offices of town councilmen of said town are public offices and places of great trust and preëminence within said town, touching the rule and government of said town and the administration of public justice in said town ; and that Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan, all of said town of Lincoln, in said

County of Providence, heretofore, to wit, on the third day of June, A. D. 1891, at said Lincoln, in said county, did use and exercise, and from thence continually afterwards to the time of exhibiting this information have there used and exercised, and still do there use and exercise without any legal warrant, grant, or right whatsoever, said offices of town councilmen of said town of Lincoln, and for and during all the time last above mentioned have there claimed, and still do there claim, to be town councilmen of said town of Lincoln, and to have, use, and enjoy all the liberties, privileges, powers, authorities, and franchises to the offices of town councilmen of said town belonging and appertaining, which said offices, liberties, privileges, powers, authorities, and franchises they, the said Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan, for and during all the time last above mentioned, without any legal warrant, grant, or right whatever, have usurped and do usurp, to wit, at said Lincoln, against the form of the statutes in such case made and provided, and against the peace and dignity of the State.

And said Attorney General, who prosecutes as aforesaid at the relation aforesaid, gives the court further to understand and be informed that said town of Lincoln is a municipal corporation in said County of Providence, and that within said town, pursuant to the statutes of said State and of a legal vote of said town, there of right ought to be seven town councilmen of said town, to be elected in the manner in the statutes of said State specified, and in accordance with law; that the several places and offices of town councilmen of said town are public offices and places of great trust and preëminence within said town, touching the rule and government of said town and the administration of public justice within the same, to wit of said town of Lincoln; and said Attorney General gives the court further to understand and be informed, that in accordance with law the annual meeting for the election of town officers of said town of Lincoln, including town councilmen of said town for the years 1891–92, was legally holden in said town on the first day of June, A. D. 1891; that at said meeting the electors of said town gave in their votes by ballot in accordance with law for town councilmen of said town for the then next ensuing

year; that said James H. Andrew, Hector Schiller, Thomas Jordan, Edwin F. Hawkins, Frank X. Roberts, George W. Harris, and William E. Manchester, all being legally qualified electors of said town and legally qualified to be town councilmen of said town, received a majority of all the votes legally cast and given in for town councilmen of said town at said meeting in said town, on said first day of June, A. D. 1891, as aforesaid, and according to law are respectively entitled to have, hold, and enjoy the offices, liberties, privileges, powers, authorities, and franchises of town councilmen of said town for the year next ensuing from and after the date of said town meeting.

And said Attorney General gives the court further to understand and be informed, that among the ballots legally cast and given in, in said town, at said annual election, holden in said town on the first day of June, A. D. 1891, as aforesaid, there were found a large number of ballots fraudulently and unlawfully cast and given in; that said ballots so fraudulently and unlawfully cast and given in were of thin or tissue paper, folded and rolled together in such manner that they could not have been legally cast and given in by different electors; that said fraudulent and unlawful ballots cast and given in as aforesaid were all for said Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan, for town councilmen of said town of Lincoln; that said fraudulent ballots so cast and given in as aforesaid were, by the town council of said town of Lincoln, said town council being the legally constituted and appointed officers to examine and count said ballots, counted as legally cast and lawful ballots, and the number of the same added to the number of ballots legally cast and given in by the electors of said town of Lincoln for town councilmen, at said annual election in said town, on, to wit, said first day of June, A. D. 1891; that said Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan, upon the counting of said fraudulent and unlawful votes, and the announcement of said town council of the result of said counting, thereupon, on, to wit, the third day of June, A. D. 1891, took the oath required by law to be taken by all persons elected town councilmen, and thereupon did use and exercise, and

from thence continually afterward, to the time of exhibiting this information, have there used and exercised, and still do use and exercise, the offices of town councilmen of said town of Lincoln, and for and during all the time last above mentioned have there claimed, and still do there claim, to be town councilmen of said town, and to have, use, and enjoy all the liberties, privileges, powers, authorities, and franchises to the offices of town councilmen of said town of Lincoln belonging and appertaining, against the form of the statutes in such case made and provided, and against the peace and dignity of the State.

Wherefore, the said Attorney General of said State, for said State in behalf of said James H. Andrew, Hector Schiller, Thomas Jordan, Edwin F. Hawkins, Frank X. Roberts, George W. Harris, and William F. Manchester, prays the consideration of the court here in the premises, and that due process of law may be awarded against the said Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan, in this behalf, severally to make answer to said State, and show by what authority they and each of them claim to have, hold, use, and enjoy the offices, liberties, privileges, powers, authorities, and franchises of town councilmen of said town of Lincoln, and that the said Robert H. Kearn, Adam Bunting, Frank E. Fitzsimmons, Benjamin F. Harris, Gilbert Carty, Louis Girouard, and John B. Dolan be excluded and ousted from said offices of town councilmen of said town of Lincoln and from further holding and exercising the same, and that said James H. Andrew, Hector Schiller, Thomas Jordan, Edwin F. Hawkins, Frank X. Roberts, George W. Harris, and William E. Manchester be adjudged entitled to the same.

ROBERT W. BURBANK,<br>
*Attorney General.*

To this information the respondents demurred.

*June* 15, 1891. PER CURIAM. The respondents urge three grounds of demurrer to the information. First, that the several members of the town council of Lincoln are joined as respondents in the information, instead of its proceeding against each one separately, as for a distinct office. The court is of opinion that this is not erroneous. While undoubtedly the title of a single member

of the town council to his office may be inquired into independently of the title of the others, the court sees no sufficient reason why, upon allegations which affect the title of all alike, they may not be proceeded against in one information. They are all members of one body, having joint functions; and even if it appeared that certain members have been properly elected and others not, there is no reason why a judgment of ouster against those who are not entitled to the office may not be rendered. *State* v. *Simpkins*, 77 Iowa, 676; *Carrico et al.* v. *The People*, 123 Ill. 198; *The People* v. *McFall*, 124 Ill. 642; *Gunton* v. *Ingle*, 4 Cranch Ct. Ct. 438; *Attorney General* v. *Simonds*, 111 Mass. 256; *The People* v. *De Mill*, 15 Mich. 164; *Symmers* v. *Regem*, Cowp. 489; *Rex* v. *Brown*, 3 Term Rep. 574, note b; *Rex* v. *Foster*, 1 Burr. 573. While these cases do not definitely decide the question now before us, because some depend upon statutes and in others the point was not raised, nevertheless, they show that there is no practical difficulty in dealing in the same proceeding with the title of several officers to their offices as members of the same body. No reason is apparent why each respondent may not justify or disclaim, as each defendant in a civil suit may separately file a plea which sets up a distinct defence or one peculiar to himself.

This information is based upon one ground which is common to all the respondents, namely: that, by reason of the casting of fraudulent votes, none of the respondents was elected, and that the relators received a majority of all the votes legally cast for town councilmen of the town of Lincoln at the meeting held on the first day of June, 1891. This upon its face presents a single ground of inquiry, and is, therefore, not bad upon demurrer.

The second ground urged is, that the casting of illegal ballots does not necessarily annul an election, and that the information is deficient because it does not state that enough illegal ballots were cast to have affected the result. This point is not well taken. The recitals in the information already referred to are quite sufficient to negative the fact of the election of the respondents. Moreover, the rules of pleading in information *quo warranto* are quite different from the ordinary rules of pleading relative to the statement of a case by a plaintiff or prosecutor. The rule is laid down in

High on Extraordinary Legal Remedies, 3d. ed. § 716, that a respondent who seeks to justify must set out his title specially and distinctly; that the people are not bound to show anything, but the respondent must show on the face of his plea a valid and sufficient title, and if he fails to exhibit sufficient authority for exercising the functions of the office, the people are entitled to judgment of ouster. In support of the statement, *Clark v. The People, ex relat. Crane,* 15 Ill. 213, 217, is cited. See, also, High on Extraordinary Legal Remedies, 3d ed. § 712, note 2, and cases cited.

The third ground of demurrer is, that whatever the facts may be, the town council is constituted the tribunal to determine what are legal ballots and to count them, and that, therefore, such determination and counting by the town council were a conclusive judicial act, which cannot be inquired into in this form of proceeding. This ground of demurrer is untenable. The town council is not a judicial body for all purposes. It has only a limited jurisdiction, specially conferred upon it by statute. In cases within such jurisdiction, where it acts upon its investigation or discretion, its determination is conclusive, except where an appeal is provided. Under Pub. Stat. R. I. cap. 10, it is apparent that the duty of counting votes and announcing the result is a ministerial duty. In many cases it is performed by the moderators and clerks of town-meetings. In towns which are divided into voting districts, where it is impossible to announce the general result, it is provided that the ballots shall be delivered to the town clerk, and that they shall be counted by the town council in the same manner as is prescribed for the counting of the ballots by moderators and clerks of town and ward meetings. This clearly indicates a ministerial duty only, and while, undoubtedly, the town council may reasonably satisfy itself as to what are the ballots proper to be counted, just as a moderator and clerk may do, it does not follow that such an authority and determination is a conclusive judicial act, which prevents an inquiry into the facts upon an information properly brought for that purpose.          *Demurrer overruled.*

The respondents were ordered to plead on or before June 18, 1891. The respondents filed their answer June 18, and the relators their replication June 25.

*July* 3, 1891.   STINESS, J.   The evidence clearly shows that the
one hundred and ten thin or tissue ballots in question in this case,
found in the ballot of District No. 1, of the town of Lincoln, at
the election for town officers held June 1, 1891, were fraudulently
cast.   Before the ballot box was opened, the moderator warned
the supervisors that they might find bunches of ballots in the box,
as he had detected one man in trying to put in such a bunch.
After opening the box such bunches were found, and they were
laid aside by direction of the moderator and the unanimous assent
of the four supervisors and the clerk.   It is inconceivable that such
ballots should have thus been laid aside, and that the result of the
vote, not including these ballots, should have been announced by
the moderator, without protest or question by any one of the officers
of both parties whose duty it was to see that the count was correct,
if there had been any doubt in the minds of the six counting officers,
four of whom were Democrats, on whose side these ballots had been
cast, that such ballots were not properly in the box.   All seemed
to be satisfied that the ballots were fraudulent, and that they should
be laid aside.   After the announcement of the result, the moderator
was advised by the town solicitor that he must count the ballots,
and thereupon he added them in and changed his previous an-
nouncement of the result.   A formal return was then made by
two of the supervisors of the election setting forth these facts,
the correctness of which was certified to by a third supervisor;
while the fourth stated that he believed the announcement of the
result by the moderator to be correct, without stating which of the
two announcements he referred to.   In none of the certificates
was there a word of denial of the truth of the statements contained
in the return, that " such ballots were found in rolls, tightly rolled
together, varying in number from five to fifty," and " from all
appearances were put into the ballot box at one time."   This
appearance is explained in evidence by the fact that the ink on the
ballots was fresh, which caused them to stick together.   The con-
duct of the four Democratic officers at the time, appointed for the
purpose of seeing to the correctness of the ballot and the count, is
utterly inconsistent with the claim now made that these ballots
were cast separately and properly.   During the controversy which
followed the advice of the town solicitor, no question was made by

any one of the facts as above stated, but only of the duty of the moderator to count the ballots so found and return them to the town council. The testimony of a police constable, in attendance at the count, that he saw one of the supervisors fold up a package of these ballots and pass them to the moderator, without a word of remonstrance or information to any one, on his part, either at the time or soon afterwards, is too much at variance with other testimony, and too incredible in itself, for belief. The evidence of the occasion is too plain to admit of doubt that the condition of the ballots showed they were fraudulently and improperly put into the ballot box. The fact that the check list shows a number of names checked, sufficient to include the now disputed ballots, would ordinarily be strong evidence in favor of their legality. But in this case the check list as counted on the night of the election did not show such a number, but more than one hundred and fifty less. This count seems to have been carefully made; the number of checks under each letter and each division under a letter being noted at the foot of the column. It is now contended that this count was erroneous, because the list now shows more names checked. We do not feel satisfied that this is so. Additional marks may easily have been made upon the list since the election, and it is hardly probable that so large a number would have been overlooked. Moreover, the singular coincidence that errors, if any were made, must in every one of the numerous divisions have been made in under-counting and not one in over-counting, and that the marks now shown are just two more than enough to account for the fraudulent ballots, as though they had been cast separately, compels more than a suspicion of the present integrity of the list. But whether the list has been changed or not, the presumption of its correctness is overborne by the official written report, acquiesced in by all the officers, setting forth that the ballots were apparently put into the box at one time.

It further appears that these ballots were enough to affect the result of the election, since without them, it is admitted, the respondents did not receive a majority of the votes legally cast. It follows, therefore, that the respondents were not legally elected as the town council of the town of Lincoln, and that judgment of ouster must be entered against them.

In addition to the judgment of ouster, the court is asked to impose a fine upon the respondents on account of improper conduct on their part.

It appears that the legality of these ballots was immediately questioned; that a written request was made to the town council counting them that said ballots be preserved, and that said town council voted not to destroy them; that on June 4, 1891, the day on which this information was filed, the respondents, acting as a town council, and after they had reason to know their title to office was to be contested, voted to destroy the ballots, and they were thereupon destroyed. Such a vote, under the circumstances, was manifestly improper, and the excuse offered for it is by no means adequate. It is urged that, as some of the ballots had been used by members of the council to figure upon, and one had also been used by a reporter, there was no certainty of the integrity of the ballot as a whole. But the evidence shows that only nine had been so used; eight of which were immediately returned, and one only could be missing, if, indeed, that was. The conduct of the respondents in destroying the ballots is not only open to the inference of improper motives, but is plainly a disregard of the good faith and fair dealing which should always be observed in such cases. Evidence which may affect the result of the action of the people at an election should be scrupulously guarded and impartially presented for the determination of the right. The destruction, with unseemly haste, after notice and without adequate excuse, of evidence upon which the title to an office is founded, is inconsistent with a *bonâ fide* justification of a right to the office, and is contrary to the interests of the public. While, therefore, we feel compelled to say that the conduct of the respondents in this regard was highly improper, we do not, on that account, feel authorized to impose a fine in this case. The history of the remedy *quo warranto*, see 3 Blackstone's Comment. *262, *263, and Short on Informations, *110, *111, n. 1, shows that it was originally a civil proceeding by writ of right for the crown; but afterwards, in the time of Edward III., or later, in order to obtain a speedier process, this form fell into disuse, and the proceeding by information was substituted. Of this latter form Blackstone says : " This is properly a criminal method of prosecution, as well

to punish the usurper by a fine for the usurpation of the franchise, as to oust him or seize it for the crown; but hath long been applied to the mere purposes of trying the civil right, seizing the franchise, or ousting the wrongful possessor; the fine being nominal only."

Mr. Heard, in the note cited above, says that long before our Revolution it lost its character as a criminal proceeding in everything except form. Prior to the statute of 9 Anne, cap. 20, the remedy only extended to encroachments upon the royal prerogative. High on Extraordinary Legal Remedies, 434. That statute extended it to usurpation of municipal offices and corporate franchises, and authorized the imposition of a fine. In some States the statute of Anne has been recognized as a part of their system of laws, and in others special statutes have been passed. We are not aware that the statute has been so recognized in this State, and it was not named among the English statutes declared to be in force in this colony in February, 1749–50. The only case which seems to recognize it, although not expressly so, is *State* v. *Brown*, 5 R. I. 1, in the closing sentence of which the court say: " As there is no pretence of improper motives the nominal fine of ten cents only will be imposed."

The implication here is, that if improper motives were found, a larger fine might be imposed. But there was no discussion of the question in the case, and no authority for the imposition of the larger fine is stated. There are cases in other States, *e. g. People* v. *Rensselaer & Saratoga R. R. Co.* 15 Wend. 113; *Attorney General* v. *Salem*, 103 Mass. 138, where the *dictum* of judges may be found, to the effect that the judgment is ouster and fine, but an examination of numerous cases discloses no instance of the rendition of such a judgment, except in cases where a statute specially authorizes the imposition of a fine. Considering the remedy, as it is now generally regarded, as practically a civil remedy, we do not think the court, in the absence of statutory authority, is justified in imposing a fine. Even the nominal fine spoken of by Blackstone is now generally disregarded. See form of judgment in *Commonwealth* v. *Fowler*, 11 Mass. 339, and note to *People* v. *Richardson*, 4 Cow. 97, 100; High on Extraordinary Legal Remedies, § 633.

This may well be so, since such a fine is but the dim shadow of the criminal nature of the proceeding.

Let judgment of ouster be entered, together with the costs of this information.