HARRIET V. COLTON, RELATOR, v. EDITH KREUTZINGER. DEFENDANT.

Argued May 6, 1936—Decided May 18, 1936.

Before Brogan, Chief Justice, and Justices Case and Perskie.

For the relator, *Wall, Haight, Carey & Hartpence (John A. Hartpence)*.

For the defendant, *C. Raymond Lyons*.

The opinion of the court was delivered by

Case, J. This is a proceeding under section 4 of the *Quo Warranto act* (3 *Comp. Stat.*, p. 4120, at p. 4212), whereby the relator claims the office of member of the county board of elections of the county of Essex for a period of two years from March 1st, 1936, and attacks the right of the present incumbent, Edith Kreutzinger, to that office. The issue comes to us on demurrer to the defendant's plea.

The information alleges in paragraph 2 that Henry W. Jeffers, chairman of the Republican state committee, on February 24th, 1936, by virtue of paragraph 68, section 19 of article VI of the act to regulate elections (Revision of 1930, *Pamph. L.* 1930, p. 671), nominated, in writing, the relator for the office of member of the county board of elections for the county of Essex and sent the nomination to the governor, in writing, whereupon, it is alleged, it became the duty of the governor to commission the relator on or before March 1st, 1936, and that the relator demanded of the governor that he commission her but that such commission was re-

fused, and that relator presented herself to the county clerk of the county of Essex and was refused permission to take and subscribe her oath of office. Relator further alleges in paragraph 3 of the information that "her nomination * * * was sent to the governor as aforesaid in a list of members of the county boards of elections in the several counties of the state, written with lead pencil, and that the name of said defendant, Edith Kreutzinger, was not included therein;" that Mr. Jeffers called at the office of the governor at the state house, failed to find the governor and informed those in charge that he wished to deliver to the governor personally "a typewritten list of the names of those persons he had nominated for members of the county boards of elections in the several counties of the state, including the said relator for said county of Essex," and that Mr. Jeffers was informed "that the lead pencil list referred to was acceptable to the governor;" that Mr. Jeffers made further unsuccessful efforts to find the governor during the month of February and on Sunday, March 1st, called upon the governor and "handed him personally the aforesaid typewritten list of nominations, including the name of said relator for said board of Essex county." The information further avers that on March 2d the governor filed with the secretary of state an appointment of the respondent, which appointment, on March 9th, was amended to read as follows: "I hereby nominate for appointment as members of the county boards of elections for the full term of two years from March 1st, 1936; * * * Essex * * * Edith H. Kreutzinger Address Montclair * * * Harold G. Hoffman, Governor," to which the official seal and the attestation of the governor's secretary were appended.

The plea asserts that on March 1st, 1936, a vacancy of office existed in the county board of elections for the county of Essex under the statute and that prior to March 1st, 1936, no nomination for the office in question on said board had been made to the governor by the chairman of the Republican state committee; further, that the relator had never been commissioned to the office, had never taken and subscribed an oath or affirmation as required by the statute, had no right

or title to the office and was without legal standing to prosecute the information. To that plea the relator demurs.

The statute, chapter 187, *Pamph. L.* 1930, p. 671 (at p. 701), in paragraph 68 provides that "the chairman of the state committee of each of the two political parties as aforesaid shall, during the month of February, in writing, nominate two persons residing in each county, qualified as aforesaid for members of the county board in and for such county; and if nomination be made in said month of February the governor shall commission such appointees on or before the first day of March; * * *," and in paragraph 70 that "if in any case the state chairman shall fail to send in writing to the governor nominations for appointments within the time specified, as aforesaid, the governor shall make such appointments of his own selection from the citizens of the county in which such failure shall occur."

The information alleges that the relator was "appointed" to the office which she claims. But what constituted the appointment? The argument is that under the statute the governor, during the month of February, occupied merely an administrative position with respect to the subject of the litigation, that the issuing of the commission to the relator was a routine act which it was mandatory upon the governor to perform, and that the latter's omission or refusal to perform this duty cannot affect relator's status or her right to the office. Assuming for the moment that this presentation of the law is correct, it follows that the act of appointment must, before March 1st, have been completely performed by the state chairman. What did the act which relator relies upon as an appointment consist of? A list of names is not an appointment. Neither is "a list of members of the county boards of elections in the several counties of the state" nor a statement by the executive secretary that the "lead pencil list * * * was acceptable to the governor." We are left absolutely uninformed as to the phraseology and the substance of that which relator chooses to call an appointment. The mere statement that relator was appointed, or indeed that she was nominated, to an office becomes, when that fact is contro-

verted, a legal conclusion which may or may not be correct, depending upon the congeries of facts, or the precise wording of the document, upon which it is based. It would seem to have been an easy matter to produce the proofs if there really was a writing by the chairman which in end of itself constituted a legal appointment, or a legal nomination, of the relator of such form and substance as to require, under the relator's conception of the governor's duties, an issuing of a commission. Relator elected, however, to avoid a factual controversy and to rely upon the proposition that the denial contained within the plea was legally insufficient. Our conclusion on this branch of the case is that the plea traversed the conclusions expressed in the information and called for a showing of the fact; and that that showing has not been made.

Further, the relator relies upon a line of cases headed by *Barr* v. *Geldziler,* 108 *N. J. L.* 397, and *Gardner* v. *Brevis,* 95 *Id.* 21, among which is also *Fort* v. *Howell,* 58 *Id.* 541, as authority for the suggestion that inasmuch as the statute provides for an appointment by the state chairman, the act of the governor in issuing the commission is purely ministerial and may be omitted. It is conceded by the relator, under the holding of *State, Gledhill* v. *The Governor,* 25 *Id.* 331, that *mandamus* would not lie against the governor in the present instance, but nevertheless the contention is—and such it must be to give the relator any show of right under this concession—that it was the plain statutory, ministerial or routine duty of the governor to commission the relator and that if he failed to do so it cannot affect the relator's right to the title to the office in question; in other words, relator flatly denies that any act by the governor, either of form or substance, is needed to complete her title to office. There is room for an argument, taking paragraphs 68, 69 and 70 in conjunction, that the statutory "appointment" consists of the nomination by the state chairman plus the issuing of the commission by the governor; but if this doubt be resolved in favor of the relator, we think, notwithstanding, that her contention is fallacious. One of the three departments of the government, the legislative, has imposed a function upon the

chief executive, vested with the powers of the second co-ordinate branch; and it is not for the third department of the government, the judicial, to dismiss, as a trivial circumstance, the omission of gubernatorial participation in the investiture of relator with such title to office as she possesses. As was said by Chief Justice Green in *State* v. *Governor, supra,* "in view of the importance of maintaining the harmonious operation of the different departments of government, the court, in the exercise of its powers, should tread upon no doubtful ground."

It is incumbent upon the relator to show title in herself before she can properly inquire by what authority the respondent exercises the same, and a failure to show such title is fatal to the application. Whether the respondent can show a true title or not in the first instance is not material to the procedure, for if the applicant can show none she has no interest in the ouster of the incumbent, and it is entirely proper for the incumbent or respondent to directly challenge the right of the relator, as she has done by the plea in this case. *Manahan* v. *Watts,* 64 *N. J. L.* 465, 470; *Bonynge* v. *Frank,* 89 *Id.* 239. We find that the relator has failed to show title in herself, and that therefore, it is not necessary to determine the title of the respondent incumbent. *McGlynn* v. *Grosso,* 114 *Id.* 540; *Connors* v. *Hillman,* 86 *Id.* 490.

The demurrer is overruled and judgment on the information must be for the respondent, with costs.