A. ROBERT BLACK *et al. vs.* MORTIMER G. CUMMINGS *et al.*

APRIL 24, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Condon, J. This is a petition in equity in the nature of *quo warranto*. The petitioners were severally candidates for the office of town councilman in the town of North Providence, and for certain other town offices in that town at the general election held on November 8, 1938. The respondents, who were also candidates for the same offices at that election, and who were declared elected, assumed the offices before the bringing of this petition and are now claim-

ing and occupying them. It is alleged by the petitioners in their petition that the respondents are not entitled to the offices, because of fraudulent and illegal acts committed at the election in voting district No. 2 of the town; and they pray that this court order a new election in that district.

The petition is accompanied by an affidavit of counsel for the petitioners that the attorney general declined to bring the petition on behalf of the state. We assume that in the performance of his official duties he refused to allow the petition to be thus brought for reasons that appealed to his judgment at that time. Thereupon the petition was filed with us and we ordered citation to issue to the respondents, notifying them that the petitioners would be given an opportunity on January 27, 1939, to show cause why their petition should be heard on its merits. This citation was duly served on the respondents and also on Ralph Cuculo, Raoul Luminello and Joseph R. Paquette, who were described in the petition as the members of the town council duly elected at the election held on November 3, 1936, who were not renominated and who would be entitled to hold their offices until their successors were elected and qualified if the election held on November 8, 1938 were declared a nullity.

By agreement of the parties, the hearing was continued to February 6, 1939, on which date they were fully heard in oral argument and were given permission to file briefs within ten days. The parties, however, did not file their briefs until February 21, 1939.

The petitioners contend that their petition should be heard on its merits without regard to common law rules governing proceedings in *quo warranto,* because the election in voting district No. 2 was so tinged with fraud as to affect more votes than the majority by which the respondents were declared elected; but they do not contend that the proof of such fraudulent voting would result in their own election, nor do they make such an allegation in their peti-

tion. Nevertheless, they argue that this court should exercise its discretion and hear this petition on its merits, because it is a matter that concerns not a single litigant but also the public, and because there is no other adequate and expeditious relief available to them.

Two other contentions pressed by the petitioners, namely, that the respondents are properly joined in one petition and that this court has jurisdiction under the constitution and the statute to grant the relief prayed for, may be conceded in a proper case without passing specifically upon the question as to all of the respondents here. There is no question of the right generally to join respondents in one petition, where the titles by which they all hold their offices depend upon identical matters of law or fact. *State* v. *Kearn,* 17 R. I. 391, 22 A. 322. G. L. 1923, chap. 379, sec. 2. See also 51 C. J. 341, §51. In a proper case there can also be no question of the jurisdiction of this court to entertain, in its discretion, a petition in equity in the nature of *quo warranto* brought by a private person in his own name and without the intervention of the attorney general. *Hoxsie* v. *Edwards,* 24 R. I. 338; *Gainer* v. *Dunn,* 29 R. I. 232; *Clarke* v. *Joslin,* 34 R. I. 376; *Horton* v. *Sullivan,* 35 R. I. 242; *Toupin* v. *Marceau,* 55 R. I. 265; *McGroarty* v. *Ferretti,* 56 R. I. 152. The question here is: Does the instant petition allege, at least *prima facie,* a proper case?

The respondents contend that it is not a proper case to be brought by the petitioners as private persons in their own names. They also make three other contentions which raise serious questions, as to whether all necessary parties have been made respondents and as to several other matters; but we shall not consider them, as the primary question on this order to show cause is whether or not we should allow a hearing on the merits. If such a hearing were allowed, all of these questions could then be regularly raised.

On the allegations of the petition and after carefully considering petitioners' argument and briefs, we find no cause

shown which would warrant exercising our discretion to allow a hearing on the merits. The petitioners fail at the very outset to justify their claim to be heard. They do not aver in their petition that the title to the offices now held by the respondents is rightfully in them, the petitioners. They do not even claim such title would be in themselves if they were successful at the hearing and proved the allegations in their petition which would destroy the title of the respondents. The most that they claim is that the election of November 8, 1938 in voting district No. 2 should be declared a nullity, and that this court should order a new election in that district, but only for the offices for which they were candidates at that election.

They admit in their petition that, if such election is declared a nullity, no decree could be made ousting four of the respondents, namely, Cummings, Sgambato, Galligan and Levesque. This is so because they, having been duly elected at the election held on November 3, 1936, would be entitled to hold over until their successors were elected and qualified. They also admit that three other former members of the town council, duly elected at the election of November 3, 1936, namely, Joseph R. Paquette, Ralph Cuculo and Raoul Luminello, who are not formally alleged in the petition to be respondents, would also each hold over in the office of town councilman. These three persons, it is admitted, are now out of office and are not making any claim to these offices. Notification of the issuance of the citation was given to them however, as the petitioners prayed that these persons, as members of the town council who would hold over, if and when the election of November 8, 1938 were declared void as a result of the instant proceedings, be enjoined from proceeding to choose certain town officers as by law provided. Obviously this prayer is an anomaly in a petition in *quo warranto* and there is grave question of its propriety but, in view of the conclusion which we have reached on the main question before us, we shall not pause to inquire further into this matter.

It is manifest from the petition that these petitioners are seeking by this proceeding to redress, not a private wrong, but a public wrong. Clearly, they are, not seeking to enforce a personal right to be inducted into the offices for which they were candidates at the election on November 8, 1938. The petitioners' purpose is merely to oust the respondents from the offices in question. Apparently the petitioners expect, by proof of their allegations, to show only that the entire election in voting district No. 2 was conducted in such an atmosphere of fraud and irregularity on the part of certain election officials and others as to render the whole election in that district void.

A brief discussion of the function of this court in *quo warranto* proceedings will, we think, be helpful to a proper understanding of our refusal to allow the instant petition to be heard on its merits. At the threshold of this discussion it is important to keep in mind that the writ of *quo warranto* is not a writ of right but rests in the discretion of the court. This is the practice that has long obtained in this state: *State* v. *Brown*, 5 R. I. 1. In *State* v. *Pawtuxet Turnpike Co.*, 8 R. I. 521, at page 523, this court says: "An information in the nature of *quo warranto* cannot be filed by a private individual without leave, which the court may, at its discretion, either grant or refuse."

In this respect a petition in equity in the nature of *quo warranto* stands on no different basis. Although it has been said by this court that the proceeding has in modern times assumed the character of a private action, *Higgins* v. *Tax Assessors of Pawtucket*, 27 R. I. 401, it is still necessary in this state to institute the proceedings in the name of the state, where only the public interest is involved.

This is the rule in almost all the states, except where, by statute, provision has been specifically made to the contrary. One authority on the subject some years ago observed that "probably there are no exceptions to the rule that the proceeding must be instituted and prosecuted in the name of

the state, or of a public officer representing the sovereignty."
2 Spelling on Extraordinary Relief 1436.

This rule is generally recognized by the cases as a neces-
sity under considerations of public policy. "It would be
detrimental to the public welfare and highly inexpedient
that title to a public office should be put in question when-
ever any private citizen sees fit to make the assault." *Jen-
kins* v. *Congleton,* 242 Ky. 46, 49. "The remedy is, there-
fore, a public one, carried on in the name of the public prose-
cutor by an information in the nature of a *quo warranto.*"
*Osgood* v. *Jones,* 60 N. H. 543, 548. "In general, public wel-
fare demands that a public officer shall not be called upon
to defend his title to office against private attack." *Marian*
v. *Beard,* 259 Mich. 183, 186.

In Rhode Island this court long ago gave expression to
like views, saying in *OBrien* v. *Board of Aldermen,* 18 R. I.
113, 116, (1892) in which mandamus was denied: "Suits for
the public should be placed in public and responsible hands.
This is the rule in *quo warranto* . . . the practice of requir-
ing the intervention of a public officer in that proceeding
is uniform." Incidentally the court held in that case that
the fact that the petitioners were candidates at the election,
concerning which there was some question, did not give them
an interest different from that of the public generally. And
later, in 1904, the court reiterated this view in *Ney* v. *Whit-
ley,* 26 R. I. 464, 467, which was a petition in equity in the
nature of *quo warranto,* saying: "In the first instance *quo
warranto* proceedings to determine the title to public office
on behalf of the state, and not on behalf of one who claims
title to it himself, should be brought by the attorney gen-
eral." It is indisputable, therefore, that a proceeding in
the nature of *quo warranto* to enforce a public right cannot
be brought in this state without the intervention of the at-
torney general.

The petitioners, however, contend that the precedents
with respect to proceedings by information in the nature

of *quo warranto* in this state or elsewhere can have no binding effect in the instant case, as it is not a proceeding by information but a petition in equity in the nature of *quo warranto* as authorized by G. L. 1923, chap. 379. They further contend that notwithstanding the *Ney* case this court has repeatedly entertained such petitions brought by private parties without the intervention of the attorney general. This is true and to such an extent that, since the turn of the century, the bringing in this court of a petition in equity in the nature of *quo warranto* to try title to office has largely supplanted the practice theretofore prevailing of filing an information in the nature of *quo warranto*. But the respondents seem to have missed the real significance of this development and the reason underlying it. An examination of the history of chapter 379 and the cases decided before and after its enactment will, we think, make it perfectly clear why the change in practice came about.

This statute first appeared in the general laws in the revision of 1896 as chapter 263. It was originally enacted by the legislature on July 31, 1891, and appeared in the public statutes for that year as chapter 1020. Prior to that year the only reference to the prerogative writs appeared in the chapter of the public statutes relating to the supreme court and its jurisdiction. Pub. stat. 1882, chap. 192, sec. 7.

This section did nothing more than to say that the supreme court should have exclusive jurisdiction of all prerogative writs, naming them, and including *quo warranto* and informations in the nature of *quo warranto*. There was no reference to petitions in equity in the nature of *quo warranto*. This section, substantially unchanged, came down through the following revisions: Rev. stat. 1857, chap. 164, sec. 5 and Gen. stat. 1872, chap. 181, sec. 3, until the revision of 1896, when to the other proceedings named thereunder was added petitions in equity in the nature of *quo warranto,* which had been authorized by chap. 1020, pub. stat. 1891, and which are exclusively within the jurisdiction of the supreme court.

Under the old practice of filing an information in the nature of *quo warranto,* the supreme court adhered to the practice at common law of requiring the information to be brought in the name of the attorney general and confining the proceeding strictly to its original character of inquiring into the title of the incumbent who was alleged to be usurping the office; and, if the defendant was found guilty, ousting him from office. This was the full extent of the remedy and it was not possible thereunder to try the title of a claimant to the office nor permissible for such claimant to set up such title. Thus in *State* v. *Lane,* 16 R. I. 620, 626, decided in 1889, the court said: "As to the claim made in the pleadings that the relator, Mr. Murray, was elected to the office of superintendent, we need only say that in this proceeding we can only pass upon the question of defendant's election, as *quo warranto* lies to remove the illegal incumbent of an office, and not to put the legal officer in his place. *Strong, Petitioner,* 20 Pick. 484, 497."

To the same effect are *State* v. *Kearn,* 17 R. I. 391, decided on June 15, 1891, and the case of *State* v. *Smith,* 17 R. I. 415, decided on July 3, 1891. Both of these cases grew out of the counting of certain fraudulent ballots in the town election of the town of Lincoln; and the court, although clearly finding that the incumbents were declared elected only on the basis of the fraudulent ballots and inferentially holding that without such fraudulent ballots, the relators would have had the majority, nevertheless did not determine the title of the relators to the office, but merely gave judgment of ouster against the incumbents.

Indeed in the *Smith* case the court at first found itself somewhat in a quandary. Under the strict common-law rules of procedure in *quo warranto,* and on account of the fact that the defendant Smith was the incumbent town clerk at the time of the election, he could not be ousted if there had been no election and qualification of his successor. Notwithstanding this situation, the court did not

feel free to declare the relator elected and thus end the matter; but instead it adhered as closely to the rule as it could and devised a qualified judgment of ouster of the defendant Smith, to become effective at such time as his successor was elected and duly qualified.

Probably in view of the peculiar situations resulting from the disposition of those cases, the legislature, on July 31, 1891, passed our present statute, on which the petitioners in the instant case rely. Under this statute the court was no longer limited to making a judgment of ouster, but, by sec. 2, it was vested with broad powers to do everything necessary to determine not only the title of the defendant but also of the relator; and, if title was found to be in the latter, both to oust the defendant and to induct the relator into office. But this statute did not dispense with the requirements which were long-established incidents of *quo warranto* proceedings. They were carried over into proceedings by petition in equity in the nature of *quo warranto*. Thus the filing of such petitions and the hearing of them upon their merits are subject to the discretion of this court; and the intervention of the attorney general in the filing of the petition is necessary, unless the facts stated in the petition and the relief sought thereby are such that the petition is in the judgment of this court a proper one to be filed and heard on its merits, even though not signed by the attorney general.

Even after the adoption of the statute permitting the filing of petitions in equity in the nature of *quo warranto*, informations in the nature of *quo warranto* were still filed. *State* v. *Carroll*, 17 R. I. 591 (1892); *State* v. *McCaughey*, 21 R. I. 341 (1899). The first reported case, brought under a petition in equity, appears to have been *Brown* v. *Barker*, 20 R. I. 579 (1898), and in that instance the petitioners were claiming the offices held by the respondents because of a defect in the placing of respondents' names on the ballot.

Thereafter petitions in equity in the nature of *quo warranto* brought in this court in the name of a private individual without the intervention of the attorney general were, in each instance, brought by a petitioner claiming the title to the office in question as well as praying for the ouster of the respondent. We have, however, found one case, *Stone* v. *Norris*, 40 R. I. 477, that might at first glance appear to be an exception. It was not cited to us by the petitioners and, indeed, it is of no help to them. Clearly in that case the court recognized the rule which had been so positively declared in *Ney* v. *Whitley, supra,* and declined to overrule that case. However, rather than grant the respondent's motion to dismiss the petition on that ground, the court decided the case in favor of the respondent on another ground, which was decisive of the entire case and also of any possible future cases growing out of the same election based upon the same allegations. Plainly that case does not change the law as laid down in the *Ney* case.

We recently said in *McGroarty* v. *Ferretti, supra,* at page 161, that: "In a proceeding of this nature to try title to a public office, the respondent having shown a *prima facie* right to the office in dispute by the production of a certificate of appointment from the proper authority, the burden of proof is then upon the petitioner to establish by a fair preponderance of the evidence that the respondent is not legally entitled to the office claimed and occupied by him, and that he should be ousted therefrom by this court, and that the petitioner's right to the office should be recognized." In that case, which was a petition in equity in the nature of *quo warranto* under chap. 379, we recognized the distinction between such a proceeding and a proceeding at common law in *quo warranto* or an information in the nature of *quo warranto*. We held that the petitioner in that case had a sufficient interest in the office, even though he was asserting only a right to hold over until his successor was legally elected and qualified, to justify bringing the

petition in his own name without the intervention of the public authorities. But in that case the petitioner was claiming the office held by the respondent.

And in *Gorham* v. *Robinson,* 57 R. I. 1, 43, in which we allowed the petitioners to bring their petition in equity in the nature of *quo warranto* without the intervention of the attorney general, the petitioners had the burden of showing that they were entitled to the offices and that the respondents were not entitled to them. The petition was denied because the petitioners were not able to prove the disqualification of the respondents, which they had alleged in their petition. In the course of our opinion we took occasion to say: "A petitioner, in order to maintain his petition in this form of proceeding, brought by him in his own interest and not by the attorney general in the public interest, must show that he himself is entitled to the office in question."

In Vermont it has been held that in a *quo warranto* proceeding "where a private individual institutes proceedings to obtain possession of an office held by another, the facts showing complainant's title to such office must be stated in the complaint, and the burden is upon him to establish his right thereto. 32 Cyc. 1460; 17 Enc. Pl. & Pr. 482; *People* v. *Lacoste,* 37 N. Y. 192; *State* v. *Davis,* 64 Neb. 447, 90 N. W. 232; *State* v. *Moores,* 52 Neb. 634, 72 N. W. 1056; *State* v. *Wheatley,* 160 Ind. 183, 66 N. E. 684; *State* v. *Kupferle,* 44 Mo. 154, 100 A. D. 265. And this rule obtains even though the state is a nominal party to the proceedings." *State, ex rel. Venner* v. *Zanleoni,* 97 Vt. 212, 215, 122 A. 495, 496. See also *Burke* v. *Beecher,* 144 A. 200 (Vt.); *State, ex rel. Andrew* v. *Lewis,* 51 Conn. 113; *Colton* v. *Kreutzinger,* 185 A. 18 (N. J.); *Pellecchia* v. *Mattia,* 193 A. 910 (N. J.); *State, ex rel.* v. *Slack,* 200 Ind. 241; *Smith* v. *Reid,* 60 S. D. 311, 244 N. W. 353.

Certainly the law in this state is clear that, where a petitioner seeks permission to file a petition in equity under the statute without the intervention of the attorney general,

the primary issue must be the right of the petitioner to the office; and the petitioner in his petition must allege claim to it, and facts in support of such claim, or he will not be heard. In such a proceeding the petitioner can prevail only on the strength of his own title and not on the weakness of that of the respondent.

In the instant case the petitioners make no pretence of claiming the offices held by the incumbents. On the contrary, by claiming that the election in voting district No. 2 was so permeated with fraud and illegalities that in reality no valid election was held in that district on November 8, 1938, and that a new election must be ordered, they necessarily admit their own inability to claim title to the offices in question. *Collins* v. *Huff,* 63 Ga. 207. The charge that the entire election in voting district No. 2 is a nullity is a serious one and carries with it most serious implications of a grievous public wrong. Such a charge ought not to be lightly alleged. If alleged, it ought to be prosecuted by a public officer and be heard only where a *prima facie* case is shown by the information or petition. See *State, ex rel. Roche* v. *Bruggemann,* 53 N. J. L. 122.

It must be obvious that if the election in voting district No. 2 is declared a nullity as prayed for by the petitioners, it is a nullity not merely as to these respondents and these petitioners, but also as to all who were candidates on the ballot in that district on November 8, 1938. And if the election in district No. 2 is thus declared a nullity, the entire election in North Providence might be in doubt until a new election could be held, if the total number of electors in voting district No. 2 exceeds the majority which any successful candidate received in that election.

From almost every point of view this is a case which, on its face, is totally lacking in the necessary elements to justify the filing of this petition by private parties making no claim to the offices in question. It has long been recognized that the public good must first be considered before

exercising discretion in matters of this kind. *The King* v. *Sargent,* 5 T. R. 466. In that case *Lord Kenyon, C. J.* said: "I cannot forbear reprehending the manner in which the prosecutor's case has been laid before the court; the affidavit on his part contains nothing but a loose general charge against the defendant. When Lord Mansfield first came into this court he found informations in the nature of *quo warranto* were had almost for the asking, but he soon saw the impolicy and vexation of such a rule; and therefore before he granted any such application he canvassed the case, and unless he found strong reasons for questioning the defendant's title, he (and the court sitting with him) always refused to let the information go."

And in Pennsylvania, under a statutory proceeding in *quo warranto,* the supreme court of that state held that the writ in such a proceeding was no more a writ of right than is a *quo warranto* information under the statute of 9 Anne. *Commonwealth* v. *Jones* (1849) 12 Pa. 365. In that case, *Gibson, C. J.,* speaking for the court, said: "Now a court will refuse its leave to issue a *quo warranto* writ, wherever it would have refused its leave to file a *quo warranto* information. Before the accession of Lord Mansfield to the chiefship of the King's Bench, it was the practice to file almost of course; but in *Rex* v. *Wardroper,* 4 Burr. 1964, he put his hand on it saying that 'the Stat. 9 Ann., c. 20, had a view to the speedy justice to be done against the usurpers of offices in corporations, as well as to quiet the possession of those who had right; and that act', he said, 'does not leave it to the discretion of the officer (the master of the crown office), as it was before, but puts it in the discretion of the Court; therefore the Court must exercise a discretion. It would be very grievous if the information should go of course, and it would be a breach of trust in the Court to grant it as of course'. . . . There are several cases in which leave to file was refused, though there was a clear defect in the incumbent's title." This language was recently quoted

with approval by the supreme court of Pennsylvania in *Commonwealth ex rel. Margiotti* v. *Union Traction Co.*, 327 Pa. 497, 194 A. 661.

We have said enough to show that the petitioners are not entitled to a hearing on the merits as of right; and further, that they have not shown us by their petition or by the argument at the hearing that they present a case which should move us to exercise the discretion vested in the court by allowing a hearing on the merits. It is evident that there is no precedent in this state in support of what the petitioners ask us to do, and authority to the contrary elsewhere is overwhelming, if not unanimous.

Hearing on the merits denied.

*John L. Curran*, for petitioner.

*Raymond E. Jordan, Mortimer G. Cummings, John A. Notte, Jr., Theodore Jaffe*, for respondents.

