ALBERT W. BONYNGE, RESPONDENT, v. ADAM FRANK ET AL., DEFENDANTS.

Submitted March 27, 1916—Decided June 19, 1916.

1. A demurrer to an information in the nature of a *quo warranto* admits the charge of the information that the demurrant intrudes into and unlawfully holds and exercises the office, but where the information itself shows that a demurrant is entitled to the office, the averments are inconsistent and the demurrant is entitled to judgment.

2. Informations in the nature of a *quo warranto* under our statute are of three classes: (1) by the attorney-general without leave of the court at his own discretion; (2) in the name of the attorney-general by leave of the court at the instance of any person desiring to prosecute; (3) under section 4 of the act where the question is of usurpation or intrusion into a *municipal* office or franchise, by a citizen who believes himself lawfully entitled to such office or franchise.

3. Even in the case of information in the nature of a *quo warranto* as to a municipal office or franchise, the title of the relator could not be put in issue prior to 1895. Under the act of that year (*Comp. Stat.*, p. 4214) it is not incumbent on the relator to put his own title in issue; but the defendant is permitted to do so, and the court will then determine which claimant, if either, is entitled to the office. *Manahan* v. *Watts*, 64 *N. J. L.* 465, explained.

4. In case of an information in the nature of *quo warranto* under section 1 of the act in the name of the attorney-general by leave of the court, any person desiring to prosecute may be relator; he need not himself claim the office; but leave of the court will not be granted unless the relator is acting in good faith in vindication of his own rights or those of the public or a portion of the public.

5. An information in the nature of *quo warranto* will lie jointly against several members of a board of trustees of a cemetery company.

6. Creditors of a cemetery company, under the general laws relating to cemeteries, have no right to vote at an election of trustees.

7. Where an information in the nature of *quo warranto* shows that a cemetery company had fifteen trustees; that the terms of five only had expired and the terms of ten had not expired; that ,nevertheless an attempt had been made to elect nine as successors of the fifteen, a judgment of ouster follows a demurrer to the information as to any defendant who is brought into court, and not shown by the information itself to be entitled to the office.

On appeal from the Supreme Court.

For the respondent, *Merritt Lane.*

For the appellants, *Waldron M. Ward* (*Pitney, Hardin & Skinner* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   Much difficulty has been caused by the manner in which the printed case is made up. We have only the information in the nature of a *quo warranto,* a demurrer by the defendant Cerrata, a separate demurrer by the defendant Moses, and a joint judgment against both. The other defendants are not shown to have been brought into court. The practice is set forth in *Attorney-General* v. *Delaware and Bound Brook Railroad Co.,* 38 N. J. L. 282. It is unfortunate that in this state of the record we can deal only with the cases of Cerrata and Moses.

The real question is whether a group of nine trustees of a cemetery association, who may be called the Frank party, or a group of fifteen who may be called the Bonynge party, are entitled to the office. The Frank party claim under an elec-

tion held April 25th, 1913, at which an effort was made to reduce the number of trustees from fifteen to nine, and to elect the nine then and there. The Bonynge party claim ten under a previous election for terms not yet expired, and five under an election held on the same day as that under which the Frank party claim.

The pleadings are unusual. The information recites that it was exhibited with leave of the court in the name of the attorney-general, and although no rule to show cause or order granting leave is printed in the case, the defendants do not dispute the fact, if, indeed, they could dispute it in the face of their own demurrer. We must assume, therefore, that the question of the propriety of the information was adjudicated by the justice who gave leave to exhibit it in the Supreme Court. The change in the statute since the decision of *State* v. *Utter,* 14 *N. J. L.* 84, by virtue of which leave may be by a single justice instead of by the court, makes the language of Chief Justice Hornblower inapplicable. The demurrer does not under present practice in effect seek to review a point already adjudicated by the court; and we do not doubt that the action of the justice may be thus reviewed. The demurrer admits the truth of the facts that are well pleaded. Among these are the averments that the term of office of but five members of the board of trustees expired; that Frank arbitrarily refused to permit any of certain-named person, lotowners and creditors, to participate in the meeting, and refused to permit them to vote; that he declared a resolution adopted reducing the number of trustees from fifteen to nine; and nominated nine persons for trustees, although the terms of office of ten existing trustees, including the relator, had not expired; that he refused to permit votes to be cast by persons representing seventeen lots; that the nine directors constituting the Frank party usurp, intrude into and unlawfully hold and exercise the office of trustees. These averments suffice to entitle the relator to judgment against Cerrata. The demurrer admits the fact that the demurrant usurps, intrudes into and unlawfully holds and exercises the office. *Davis* v. *Davis,* 57 *Id.* 203,

204. On the face of the pleadings the relator would be entitled to judgment of ouster unless there is some defect in the information which prevents the result. As to Moses there is such a defect. The information shows that his term has not expired. As to him the averments are inconsistent and he is entitled to judgment. The judgment below against him must therefore be reversed, to the end that judgment on the demurrer may be entered in his favor. We proceed to the case of Cerrata.

The defendants argue that the relator is not shown to have any right to exhibit the information. The point is that although the demurrer admits that the relator is one of the hold-over trustees, his title to the office is not fully set out in the information. The demurrants have conceived the notion that under our present act an information in the nature of *quo warranto* is no longer what it was, a public proceeding to determine a public right, but rather a mere civil suit *inter partes* to determine which is entitled to an office. The error has arisen from the failure to observe the three different species of information—*first,* an information by the attorney-general alone without leave of the court at his own discretion; *second,* an information under section 1 of the act (*Comp. Stat., p.* 4210) in the name of the attorney-general by leave of the court at the instance of any person desiring to prosecute; *third,* an information under section 4 of the act (*Comp. Stat., p.* 4212) where the question is of usurpation or intrusion into a municipal office or franchise by a citizen who believes himself lawfully entitled to such office or franchise. The rights of the attorney-general on his own initiative come from the common law; the right of any person desiring to prosecute in the name of the attorney-general comes from section 1 of the act of 1795 (*Pat. L., p.* 177), as amended in 1903 (*Pamph. L., p.* 375; *Comp. Stat., p.* 4210); the right of the claimant of a municipal office to proceed in his own name comes from the act of 1884. *Pamph. L., p.* 320; *Comp. Stat., p.* 4212. It is only the third class that resembles a civil suit *inter partes.* Even in cases of that class, under the act as originally passed, the title

of the relator could not be put in issue. *State, ex rel. Davis,* v. *Davis,* 57 *N. J. L.* 203. In that case the court said that the demurrer which was to the information had no effect but to admit the usurpation of the defendant of the office in question. The next year the legislature passed the act of 1895 *(Pamph. L., p.* 82), which now appears as section 12 *(Comp. Stat., p.* 4214), with the addition of the words "that the very right may be determined in the one proceeding." It was held under this statute *(Manahan* v. *Watts,* 64 *N. J. L.* 465, 470) that the relator must show a title in himself before he can properly inquire by what authority the respondent exercises the same. The court referred to the first decision in *State, ex rel. Davis,* v. *Davis,* 57 *Id.* 80, on the motion to strike out the plea and not to the later decision in the same case upon demurrer to the information cited above. We think it clear that the court did not mean to decide that it was incumbent on the relator to put his own title in issue. The legislature could not have meant to require that, since it left the act of 1884 unchanged, and under the act, as Chief Justice Beasley said in the second Davis case *(Id.* 505): "So clear is the legislative expression on this point that it does not even make the possession of title in the relator a prerequisite to his right to become the actor in the procedure, for it bestows that privilege on 'the citizen who merely *believes himself* lawfully entitled to such office.'" What the act of 1895 did was to give the defendant the right to put the title of the relator in issue. That such was the effect of the legislation is shown by the decision in *Magner* v. *Yore,* 75 *Id.* 198. In that case the relator, although he had not set forth his title in the information, had judgment because the defendant had not by his plea challenged the relator's title. In *Bullock* v. *Biggs,* 78 *Id.* 63, the defendant avoided that difficulty and challenged relator's title by plea. Finally, in *Dunham* v. *Bright,* 85 *Id.* 391, the dual aspect of an information in the nature of a *quo warranto* was recognized, the present Chief Justice saying: "The rights of the public as well as those of the parties are involved." And the language of the opinion in Manahan *v.* Watts, as far as it was to the contrary, was recog-

nized as mere *dictum*. We have dealt with this question at
greater length than was really justifiable, and we have done
so because of the apparent sincerity of the argument that the
relator has failed, since he has failed to set forth his title in
his information. But the present case does not arise under
section 4; it arises under section 1. Under that section *any
person* desiring to prosecute is authorized to exhibit an in-
formation. To guard against abuse of the right, leave of the
court is required, and that leave would not be granted unless
the justice was satisfied that the relator was acting in good
faith in vindication of his own rights or those of the public,
or a portion of the public. In this case the question was de-
cided in relator's favor, and the defendant does not question
the good faith of the relator, nor that his object is either to
vindicate his own right as trustee, or lotowner, or the rights
of his fellow-lotowners, against the anarchy that would re-
sult from two boards of trustees assuming to manage the
cemetery.

It is further urged that an information will not lie against
several persons claiming to be a board of trustees. The
theory seems to be that each trustee holds an independent
position which must be made the subject of a several suit.
We do not doubt that each trustee holds his own office, and
that an information could be maintained against each alone;
but that is too narrow a view to take of the case. The real
question is whether the Frank party constitute the board of
trustees, or whether as a board they are usurpers. This can
best be determined by bringing all the individual members
into court in the same suit. In that suit can be determined
any fundamental question that affects the title of all, and at
the same time any question that affects the title of one only.
The point arose in the King's Bench as long ago as 1776.
An information was filed against six different persons for
usurping three different offices, affecting the legality of the
membership of the freemen and free burgesses and common
councilmen of a town. The point was distinctly taken and
overruled by Lord Mansfield and his associates. *Symmers* v.
*The King, Cowp.* 489. A precedent of an information against

several persons usurping the offices of burgess and freemen of a borough is given in 6 *Went. Pl.* 154. A similar question has arisen in Rhode Island. *State, ex rel. Andrews,* v. *Keam,* 22 *Atl. Rep.* 322. This was an information against seven acting as a town council. The court said: "They are all members of one body, having joint functions; and even if it appeared that certain members have been properly elected and others not, there is no reason why a judgment of ouster against those who are not entitled to the office may not be rendered." We need not go outside our own courts for cases in point. As long ago as 1828, an information was filed against seven men who claimed to be trustees of a Presbyterian church; six claimed under one election, one under another election. No difficulty was raised to the procedure by George Wood, who was counsel for the defendants. In 1911, in Dunham *v.* Bright, already cited, an information was filed against the members of a board of education. No difficulty was found by reason of misjoinder.

The suggestion that the effect of a judgment for the relator would be to oust the corporation itself of its franchise hardly merits discussion. The last cases cited are sufficient. The information is not an attack upon the existence of the corporation, or even an attempt to oust all the trustees. The only controversy is as to the personnel of the board. If the Frank party are ousted, the association still has trustees. The judgment against Cerrata is therefore affirmed, with costs.

We have said enough to dispose of the case. It may gratify counsel to know that we have considered the fundamental question and agree with the Supreme Court that creditors had no right to vote. Section 1 of the act of 1848, as amended in 1879 (*Comp. Stat., p.* 372), is obviously inconsistent with the act of 1899 (*Comp. Stat., p.* 391), which regulates the right to vote, as well as the number, qualifications and terms of office of trustees. By the later act, proprietors of lots who are of full age are made the electors and the number of trustees may be as many as fifteen. The West Ridgelawn Cemetery, which is the one now involved, had evi-

dently acted under the act of 1899, since it is shown by the information to have had fifteen trustees; the act of 1848 permitted twelve only. Whether the corporation had acted under the act of 1899 and thereby assented to the deprivation of creditors of the right to vote is not, however, important. In the present case, the creditors who were not allowed to vote are not averred in the information to have owned and held "bonds, stock or other duly-authorized evidences of debt." The averment that under the statute they had the right to cast forty-nine votes is a mere averment of a legal conclusion. The facts stated do not show that they were qualified electors even under the act of 1848, as amended in 1879. The fact that creditors have no vote under the act of 1899, and that their votes were properly rejected, would not be dispositive of the case. It appears that ten trustees held over. If the reduction of the number to nine was properly effected, the board was more than full and the defendants could not be elected because there were no vacancies. Section 1 of the act of 1899 provides for a classification of the trustees first elected, one class to hold for one, one class for two, and one class for three years. Section 2 provides that trustees chosen subsequent to the first election shall hold their places for three years. The clear intent was that trustees should hold for three years, except so far as the classification made necessary shorter terms for some at the beginning. The information shows that the term of office of but five out of fifteen trustees expired; and that the terms of ten had not expired. This could only be if fifteen had been elected prior to the meeting now in question. The necessary inference is that the election of 1913 was not the first election. It is only at the first election, according to the express language of section 2, that a full board of such number as may be determined shall be elected. The attempt to determine a different number, and to elect a full board at the election of 1913, was illegal, and the defendants seem to be guilty of intrusion, as Cerrata for himself admits by his demurrer. There can, however, be no judgment of ouster ex-

cept as against Cerrata, since Moses is entitled to judgment in his favor, and the others do not appear to have been brought into court. As to the Bonynge party, who are also defendants, there is no issue to be decided. They, too, have not been brought into court.

*For affirmance as to Cerrata*—The Chancellor, Chief Justice, Garrison, Swayze, Parker, Bergen, Kalisch, Black, White, Terhune, Heppenheimer, Williams, Gardner, JJ. 13.

*For reversal*—None.

*For affirmance as to Moses*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Parker, Bergen, Kalisch, Black, White, Terhune, Heppenheimer, Williams, Gardner, JJ. 13.