(75 South. 103)

No. 21067.

STATE ex rel. McKAY et al. v. BOARD OF TRUSTEES OF FIREMEN'S PENSION AND RELIEF FUND.

(April 16, 1917.)

*(Syllabus by the Court.)*

1. STATUTES ☜157, 225 — CONSTRUCTION — FIREMEN'S PENSION AND RELIEF FUND.

Act No. 153 of 1914 is an independent statute of later date than any other which purports to regulate the rights and obligations of the administrator and beneficiaries of the "firemen's pension and relief fund for the city of New Orleans," it, in unambiguous terms, imposes upon the board of trustees a mandatory duty with respect to certain designated persons claiming to be beneficiaries of that fund, and it repeals all laws in conflict with its provisions. Whilst, therefore, it is to be construed with other statutes, in pari materia, so as to give the utmost effect to all, its provisions must be held to control those of the prior statutes in all cases of irreconcilable conflict.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 225, 226, 302, 303.]

2. MUNICIPAL CORPORATIONS ☜72, 200 — STATE BOARD—REVOCATION OF AUTHORITY— CONTRACT.

The board of trustees of the firemen's pension and relief fund of the city of New Orleans is a mere agent, created by the state for a public purpose and holding a revocable mandate,

———————
[1]Ante, p. 417.

the statutes creating the board and defining its duties are, in no sense, contracts, and it has no standing to contest the right of the state to regulate the disposition of the fund of which it is charged with the administration.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 176, 547.]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Mandamus by the State of Louisiana, on relation of the Widow Jas. McKay and others, against the Board of Trustees of the Firemen's Pension and Relief Fund. Judgment for relators, making the writ peremptory, and the defendant board appeals. Affirmed.

John J. Reilley, Asst. City Atty., and I. D. Moore, City Atty., both of New Orleans, for appellant.  M. D. Dimitry, of New Orleans, for appellees.  E. M. Stafford, of New Orleans, amicus curiæ.

Statement of the Case.

MONROE, C. J.  The respondent board appeals from a judgment making peremptory a writ of mandamus, ordering it to place relators (five widows of members of the paid fire department of New Orleans who have died since January 1, 1904) on the pension and relief roll and allow them to participate in the firemen's pension and relief fund, created by Act 43 of 1902, amended by Act 17 of 1904; relators' right to the writ being asserted, more particularly under Act 153 of 1914, which is entitled, and reads, as follows:

"An act making the provision that widows of firemen of the paid fire department of the city of New Orleans, deceased since January 1, 1904, shall participate in the firemen's pension and relief fund created by Act No. 43, of 1902, amended by Act No. 17 of 1904.  *  *  *

"Section 1. Be it enacted  *  *  *  that surviving widows of members of the paid fire department of  *  *  *  New Orleans who have died since January 1, 1904, shall be entitled to participate in said firemen's pension and relief fund created by Act No. 43 of  *  *  *  1902, amended by Act No. 17 of  *  *  *  1904, from the date of approval of this act by the Governor, and shall be placed upon the rolls and books

of said firemen's pension and relief fund for such amounts and under such rules and regulations as may be established by the firemen's pension and relief fund board, created by said Act No. 43 of 1902, amended by Act No. 17 of 1904.

"Sec. 2. Be it further enacted, etc., that all laws in conflict herewith or contrary thereto, be and the same are hereby repealed."

By way of return to the rule nisi that was issued, and for cause why the alternative writ of mandamus should not be made peremptory, respondent alleges that Acts 43 of 1902, and 27 and 153 of 1914, are statutes in pari materia, which are to be construed together, and, when so construed, vest in respondent the power to determine who shall participate in the fund in question and make its decisions upon that question final and conclusive; but that, if it be the purpose of Act 153 of 1914 to deprive respondent of the discretionary power originally vested in it by Act 43 of 1902, in so far as it may be exercised with respect to the widows of firemen who have died since January 1, 1904, then that act is unconstitutional, as in contravention of articles 1, 2, and 166 of the state Constitution, and the Fourteenth Amendment to Constitution of the United States.

It is admitted that the husbands of four of the relators died in 1904 and the husband of the fifth in February, 1905; that they were members in good standing of the paid fire department of New Orleans; had performed their duties faithfully and efficiently; had sustained the reduction of 1 per cent. from their respective salaries, as provided by law, for the increase of the pension fund; and had, at all times, complied with the rules of the department. It is further admitted that, when relators' applications were submitted to, and denied by, respondent, the accumulated fund exceeded $100,000 and was sufficient to meet all demands, but respondent alleges that it is unable to say how long it will be sufficient for the payment of the maximum pensions provided for by Act 43 of 1902.

## Opinion.

It is one of the ordinary functions of municipal government to make provision for the extinguishment of fires, and the various statutes incorporating, and reincorporating, the city of New Orleans have, in express time, conferred upon it that power. At some time prior to 1894, as we infer, the city had, by ordinance, converted, what had been a volunteer and unpaid fire department into a department the members of which became its salaried employés, and, during the session of that year, the General Assembly passed Act No. 83, with the evident purpose of placing the department, as then existing, upon a more stable basis and, in most respects, beyond the fluctuations of municipal legislation. The act created a board of fire commissioners, to be composed of nine members, five of whom were to be elected from as many fire districts, into which the city was to be divided, two were to be elected at large, and the remaining two were to be the mayor and the commissioner of police and public buildings.

"The said fire commission [declares section 6 of the act] is hereby empowered and directed to possess and exercise, fully and exclusively all the powers and perform all the duties for the government, * * * maintenance, and direction of the fire department of the city of New Orleans. * * * And the said commission shall hereafter have sole and exclusive power and authority to extinguish fires in said city of New Orleans."

Section 10 declares:

"That the chief engineer [and other designated officers] and all other employés of the present fire department be retained in their respective positions. The said board may appoint as many officers and other employés as may be necessary. The tenure of office of all officers and employés of the fire department shall be perpetual unless removed for cause as provided for in this act."

The act contains various other provisions appropriate to the regulation of an instrumentality established by the state for a public purpose and wholly under its control; and it has been amended and, in part, re-

enacted by Acts 113 of 1898, 22 of 1908, and 58 of 1910; all of which deal with the New Orleans fire department as with any other state agency. In the meanwhile, in 1902, the General Assembly thought proper to add to the measures of temporary relief, already provided for cases of sickness and death among the employés of the department, certain provisions for the creation and maintenance of a fund from which pensions may be paid to those who become permanently disabled and to the widows and children of those who are killed or die in the service. The act (No. 43 of 1902) provides that the fund shall be constituted and maintained by the appropriation to it of the following revenues, inuring to, or to be otherwise expended by, the city of New Orleans, to wit, 1 per cent. of the revenue collected by the city from licenses; 10/22 of all taxes collected by the city from foreign insurance companies and agencies; the proceeds of all fines imposed on members of the department by way of discipline; the proceeds of the sales of all condemned horses and other personal property of the department; the proceeds of all rewards for extraordinary services by the department or its members, with certain exceptions; the proceeds of all gifts or bequests to the department; the proceeds of an assessment of 1 per cent. to be withheld from the monthly salaries of the members of the department. It further provides that, when so accumulated, the sum of $200,000 shall be retained as a permanent fund, the annual income from which may be made available for the payment of pensions and relief, and that thereafter the percentages of the city's revenue from licenses and taxation shall not be paid into the fund. Section 3 provides, among other things:

"That * * * said board shall * * * hear and decide all applications for relief, or pensions under this act and its decisions on such applications shall be final and conclusive, and not subject to review or reversal except by the board."

"Sec. 12. * * * That, if any member of said fire department shall while in the performance of his duty, be killed or die as the result of an injury received in the line of his duty, or of any disease contracted by reason of his occupation, or shall die from natural cause, while in the said service and shall leave a widow or child or children under the age of fourteen years surviving, said board of trustees shall direct the payment from said pension and relief fund monthly, to such widow, while unmarried of fifteen dollars, and for each child until it reaches the age of fourteen, six dollars; should he leave no widow or children, but a widowed mother dependent upon him for support, the said board shall pay her the sum of fifteen dollars monthly, as long as she remains unmarried.
"Sec. 13. * * * That, if at any time there shall not be sufficient money in such pension or relief fund to pay each person entitled to the benefit thereof the full amount per month as hereinabove provided, then an equal percentage of such monthly payments shall be made to each beneficiary until the said fund shall be replenished to warrant the payment in full of each of said beneficiaries."

Section 20 amalgamates the then existing relief fund with the pension and relief fund provided for by the act.

"Sec. 23. * * * That this act to take effect immediately after its promulgation; provided, that no pensions shall be paid or money drawn from said fund for any purpose until the sum of $50,000 shall be to its credit; and provided further that the rules and regulations of the mutual benefit and relief fund now existing shall continue in full force and effect until the above mentioned sum is obtained, when the said mutual benefit and relief fund, shall be merged in the Firemen's Pension and Relief Fund."

Act 17 of 1904 amends and re-enacts certain sections of the act thus quoted and provides, among other things, that all fines imposed by the courts for infraction of city ordinances relative to fire escapes, fire wells and hydrants, open hatches, oils, gunpowder, right of way of the fire apparatus through the streets, and all other laws relative to the fire department shall be paid into the pension and relief fund; and it amends section 23 of the act of 1902, by reducing the amount required to be accumulated, before beginning to draw upon the fund, from $50,000 to $20,000. Act 152 of 1912 amends and re-enacts section 2 of the act of 1902, and thereby changes the personnel of the board of

trustees by adding thereto the secretary of the board of fire commissioners and four active members of the department, below the rank of assistant engineer, and eliminating therefrom two assistant engineers.

Act 27 of 1914 amends and re-enacts the title and various sections of the act of 1902 and thereby makes the following, with other, changes, of greater or less importance, to wit: It changes the personnel of the board of trustees by adding two active members of the department; it provides that not less than 1 per cent. nor more than 2 per cent. shall be withheld, at the discretion of the board, from the monthly pay of the members and added to the pension and relief fund; it repeals section 4 of the act of 1902, which provided that the proceeds of taxes levied by the city on foreign insurance companies and agents should be added to the fund; it provides that, when $100,000, instead of $200,000, shall have been accumulated, it shall be retained as a permanent fund, the interest from which may thereafter be used, and that when $200,000 shall have been accumulated, the 1 per cent. of the proceeds from licenses shall no longer be paid by the city; it confines the right to a pension to the widows and children of firemen who "shall, while responding to an alarm of fire or while working at or returning from a fire, be killed or receive injuries which shall result in death * * * within six months," and eliminates the provision which allowed such pensions to the widows and children of firemen who have died natural deaths; it re-enacts the provision of section 3 of the act of 1902, to the effect that:

"The said board * * * shall hear and decide all applications for relief, pensions and death benefits under this act, and its decisions * * * shall be final and conclusive and [not] subject to review or reversal except by the board."

The act thus quoted was approved on June 18, 1914, and Act 153, upon which relators rely, was approved on July 9th following, and, as they deal with the same subject-matter, we agree with counsel for respondent that they should be construed together.

Upon a former application by Mrs. Lynch, one of the present relators, it was held by this court, on the rehearing, that the matter was controlled by the last above quoted provision of the act of 1902 and hence that, as the application there in question had been rejected by the board, we were unable to afford the applicant the relief sought by the appeal. State ex rel. Lynch v. Board, 117 La. 1071, 42 South. 506, 8 Ann. Cas. 945.

As appears from the original opinion in that case, the ground upon which the board rejected the application of Mrs. Lynch was that her husband had died in 1904; that the $20,000 required by Act No. 17 of that year as the starting point from which pensions were to be paid had not been accumulated until May 24, 1905, and hence that she was not within the terms of the law.

Act 43 of 1902, as we have seen, declared that the board should direct the payment of pensions to the widows and children of firemen who should die as the result of injuries received while in the discharge of their duties, or of disease contracted by reason of their occupation, or "from natural cause while in the said service," and it is to be assumed that, upon May 24, 1905, when the $20,000 had accumulated, or, as soon thereafter as a fireman died while in the service, leaving a widow, children, or dependent mother, the respondent began to make payments of pensions, in accordance with those provisions, and continued so to make them until Act 27, approved June 18, 1914, went into effect, to the widows and children of all firemen who had died in the service, whether as the result of injuries received, disease contracted by reason of the occupation, or from natural causes having no connection with the occupation. Section 12 of the act of 1902

was, however, amended and re-enacted by Act 27 of 1914 so as to read, quoting in part:

"Sec. 12. Be it further enacted, etc., that if any member of said fire department shall, while responding to an alarm of fire or while working at or returning from a fire, be killed or receive injuries which shall result in the death of the injured fireman within six months from the time said injuries are sustained, and shall leave a widow, or child or children under the age of fourteen years, surviving, said board of trustees shall direct the payment from said pension and relief fund to such widow, while unmarried, of fifteen dollars, monthly, and for each child, until it reaches the age of fourteen, six dollars monthly," etc.

[1] The provision for pensions to the widows of firemen dying from natural causes, as contained in the act of 1902, having been thus eliminated, there is now no law, save as contained in Act 153 of 1914, authorizing such pensions. That act is, however, an independent statute, of later date than any other upon that subject; it, in unambiguous terms, imposes upon the respondent board the mandatory duty to place upon its rolls and books, as entitled to pensions and relief, the widows of all members of the fire department whose husbands have died since January 1, 1904; and it repeals all laws contrary to, or in conflict with, its provisions. Whilst, therefore, it is to be construed with other statutes, in pari materia, so as to give the utmost effect to all, its provisions must be held to control those of the prior statutes in all cases in which there is irreconcilable conflict between them. Considering it with reference to those statutes, it, as we think, discloses the following double purpose, to wit: to include as beneficiaries of the pension fund the widows of firemen who died after the act of 1902 went into effect, but before the accumulation of the fund, as well as the widows of those who did not die until after the accumulation of the fund; and to confer that status on all widows whose husbands, being members of the fire department, may have died, from any cause whatsoever, between January 1, 1904, and the date when the act was approved.

Section 23 of the act of 1902, as we have seen, declares:

"That this act to take effect immediately after its promulgation; provided, that no pensions shall be paid or money drawn from said fund for any purpose until the sum of $50,000 shall be to its credit," etc.

And, as amended and re-enacted by Act 17 of 1904, it reads in the same way, save that $20,000 is substituted for $50,000. Mrs. Lynch's husband died in November, 1904; the fund of $20,000 required by Act 17 of that year was not accumulated until May 24, 1905, and the board ruled that she was not entitled to be placed on the roll because her husband had died prior to the date last mentioned. It seems clear that the General Assembly has concluded that Mrs. Lynch and the other relatrices, who are similarly situated should now be placed on the rolls.

On the other hand, the widows whose husbands died from natural causes, as well as those whose husbands died from injuries, exposure, etc., between May 24, 1904, and the date upon which Act 27 of 1914 went into effect, were entitled to be placed on the rolls, and, doubtless, were so placed; but the effect of the elimination, by Act 27 of 1914, of the provision for their benefit would, perhaps, be to stop their pensions; and it appears that, upon further consideration, the General Assembly has concluded to limit the application of that elimination to cases to arise in the future, and to continue the pensions which were properly awarded to the widows of husbands who died from natural causes and who have been relying on them since 1905. It will be observed, however, that Act 153 of 1914 provides only for widows whose husbands "have died since January 1, 1904," and that it leaves Act 27 unaffected in so far as it applies prospectively and to widows whose husbands may hereafter die.

It is evident, then, that, to sustain the contentions of the respondent would be to strike the act in question with nullity, whereas, construing it with the other statutes, in pari materia, as the learned counsel suggest, it can be given its intended effect and still leave a wide margin for the operation of the statutes with which it is construed.

[2] The suggestion that Act 153 of 1914 is unconstitutional is based upon the propositions that it impairs the obligations of a contract and deprives some one (respondent, presumably) of liberty or property without due process of law. We have, however, taken some pains to show the manner and purpose of the creation of the respondent board, and we think that we have shown that it is a mere agent appointed by the state for a public purpose, and holding a power of attorney which is revocable at the option of the state. The statutes which create it and confer upon it all the powers that it possesses, including the power to administer the fund in question, are therefore in no sense contracts, and it has no standing to contest the right of the state to regulate the disposition of the fund of which it is thus charged with the administration. Reynolds v. Baldwin, 1 La. Ann. 167, 168; Police Jury v. City of Shreveport, 5 La. Ann. 665; Dillon on Municipal Corporations (5th Ed.) vol. 1, p. 754, § 431.

The judgment appealed from is therefore affirmed.