WILLIAM J. TONKIN, RELATOR, v. SAMUEL S. KEN-
WORTHY, DEFENDANT.

Submitted May 12, 1933—Decided January 24, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD
and HEHER.

For the relator, *Walter C. Ellis, Spaulding Frazer* and *William Newcorn.*

For the defendant, *Frank J. Reardon, Thomas M. Kane* and *Thomas E. Duffy.*

The opinion of the court was delivered by

HEHER, J. Relator, a citizen, resident and taxpayer of the village of Ridgewood, in the county of Bergen, was granted leave of this court, under section 1 of an act entitled "An act relating to informations in the nature of a *quo warranto*" (3 *Comp. Stat., p.* 4210), to exhibit in the name of the attorney-general an information in the nature of a *quo warranto* against defendant, to inquire by what warrant defendant claims to hold the office of executive secretary of the New Jersey State League of Municipalities. Leave was allowed without prejudice in respect of the point raised by defendant, on the argument of the rule to show cause, as to the propriety of the information.

Defendant demurred to the information. A demurrer is an admission of all facts that are well pleaded; but it does not admit conclusions of law stated in the information. While the demurrer here interposed admits the allegation of the information that demurrant usurps, intrudes into and unlawfully holds and exercises the office in question, if the information contains allegations showing that demurrant is entitled to the office, the averments are inconsistent, and he is entitled to judgment. *Bonynge* v. *Frank,* 89 *N. J. L.* 239; 98 *Atl. Rep.* 456; *Edelstein* v. *Fraser,* 56 *N. J. L.* 3; 28 *Atl. Rep.* 434; *Attorney-General* v. *Fox,* 72 *N. J. L.* 6; *Browne* v. *Hagen,* 91 *Id.* 544.

The information alleged, *inter alia,* that the New Jersey State League of Municipalities is an association of municipalities organized under the provsions of chapter 163 of the laws of 1915 (*Pamph. L.* 1915, *p.* 321), authorizing municipalities in the state to join or to form and join an organization of municipalities for joint municipal action upon questions affecting the general welfare of such municipalities;

that on or about June 21st, 1932, at a meeting of the executive board of the league, Barrett L. Crandall was duly elected its secretary; that the executive secretaryship is an office provided by the act; that the league is governed by a constitution, duly adopted by the members thereof, which provides for a governing body, known as the executive board, elected at the annual meeting of the league, and an advisory board, made up of municipal officials or persons interested in civic problems, chosen by the executive board; that the constitution directs that the members of the advisory board shall be invited to attend all meetings of the executive board, and shall be permitted to participate in the discussion of all questions, but without the right to vote; that the constitution also provides that the office of executive secretary shall be filled by the appointment of the executive board, on such terms and at such salary as it may from time to time prescribe; that under the constitution the secretary's term is not fixed, and that Crandall held for an indefinite term; that at a meeting of the executive board, held on November 28th, 1932, the office of executive secretary was declared vacant, and defendant, who was then president of the league, was declared elected to said office, and immediately thereafter resigned as president of the organization; and that said defendant has ever since usurped, intruded into, and unlawfully held and exercised, and still unlawfully holds and exercises, the said office, to the exclusion of the said Crandall.

A preliminary question must first be determined. Defendant maintains inasmuch as the act creating the league of municipalities provides that the governing board of each member municipality shall have authority to designate the mayor or other executive officer of the municipality, or either of the members of the governing body, to represent it in the league, and relator was not so designated, he is a mere stranger seeking to interfere with the affairs of the league, and does not have the requisite status for intervention by *quo warranto* to litigate the legality of the election. Assuming that the public interest in this office is such as to justify inquiry, by information in the nature of a writ of *quo warranto*, into the

legality of the election, relator has such an individual interest in the due election of this officer as to justify his interposition by *quo warranto*. He is a citizen and taxpayer, and director of revenue and finance, of the village of Ridgewood, a member municipality of the league. As such he has the undoubted right to interpose. His good faith is not in question. *Bonynge* v. *Frank, supra; O'Neill* v. *Bayonne,* 99 *N. J. L.* 430, 434; *McGuire* v. *Demuro,* 98 *Id.* 684; *Mitchell* v. *Tolan,* 33 *Id.* 195.

The next inquiry is whether this is an office the title to which can be determined by *quo warranto*. Defendant argues that it is not a state or municipal office; that the league is not a body corporate, and that the holder of the secretaryship is not, therefore, an officer of a private corporation whose title may be tested by the writ of *quo warranto*. The only method by which the right to an office can be judicially determined in this state is by proceedings in the nature of a *quo warranto*. And this is true not only with relation to state and municipal offices, but also those of private corporations, religious as well as secular. *Schilstra* v. *Van Den Heuvel,* 82 *N. J. Eq.* 612. The jurisdictional basis for the employment of an information in the nature of a *quo warranto,* as a remedy for an unlawful usurpation of an office in a merely private corporation, is the same as in cases of public or municipal corporations. There is in both cases an unfounded claim to the exercise of a corporate franchise, amounting to a usurpation of the privilege granted by the state. *Hankins* v. *Newell,* 75 *N. J. L.* 26. So it is immaterial, in the instant case, whether or not the league has the status of a body corporate. It was organized under a statute that authorized the formation of an organization of municipalities of the state, "for the purpose of securing concerted action among such municipalities in behalf of such measures as such organization shall determine to be in the common interest." It is a public body created for public purposes only. The statute granted a franchise or privilege akin to that exercised by corporations.

There are franchises other than purely corporate franchises within the intendent of the *Quo Warranto* act. The

right to preside over the meetings of a city council has been held to be a "franchise," within the meaning of the *quo warranto* statute of Iowa, phrased identically with ours. *Cochran* v. *McCleary,* 22 *Iowa* 75. Likewise, the right of the recorder, who was *ex officio* president of the council, to vote in cases where there was a tie was declared to be a franchise, and it was held that the person who usurped that right usurped a franchise. *Reynolds* v. *Baldwin,* 1 *La. Ann.* 162. The right to determine the number of deputies in county offices, vested by statute in a majority of the judges of the Circuit Court of the county, was held to be a legal right conferred by the sovereign state upon the citizen, and is clearly within the definition of the word "franchise." *State* v. *Dawson,* 284 *Mo.* 427; 224 *S. W. Rep.* 824.

While differing in origin, form and procedure from the writ of *quo warranto,* the common law remedy by information in the nature of a writ of *quo warranto* like the ancient writ, was the proceeding by which to try the title to an office or franchise, and it has long been settled in England that the office, with respect to which the remedy by information would lie, must have been public in its nature. The remedy by information may not be invoked for the redress of mere private grievances, and can only be invoked when wrong has been done to the public. If a wrong complained of be the usurpation of an office, it must be the usurpation of an office *public in character;* otherwise the people cannot be called upon in their sovereignty to petition for its redress. The principle which underlies the classification of offices in a merely private corporation as having a public character, when viewed with respect to the remedy under consideration, is that these offices are created so that the design of the grant of the corporate franchise may be effectuated, and the existence of the corporation perpetuated by the due and regular election of officers in accord with the rules and laws of their governance. Those who fill the offices are alike amenable to the law of their origin. *Brooks* v. *State,* 26 *Del.* 1; 79 *Atl. Rep.* 790; 51 *L. R. A. (N. S.)* 1126. In *People* v. *Utica Insurance Co.,* 15 *Johns. (N. Y.)* 386, the Supreme Court of New York

held: "That every privilege or immunity of a public nature, which cannot legally be exercised without legislative grant, is a public franchise." The league of municipalities emanates from the legislature. The powers and privileges exercised by it are derived from a legislative grant. They are intended to secure unity of action for the common good. The functions of the league, as ordained by the statute, are wholly public in character. The secretaryship is denominated an office. The right to act as such is a legal right conferred by law. The office is therefore of such a character that the remedy by information in the nature of a writ of *quo warranto* may be invoked against one who usurps it.

This brings us to a consideration of the merits of relator's claim. He attacks the legality of defendant's election to the office in question on three grounds, viz: (1) the office was not vacant at the time of his election by the executive board; (2) the offices of president and secretary are incompatible, and defendant, who was then the league's president, was therefore ineligible for the office of secretary, and his election thereto was consequently a nullity; and (3) the election was illegal and of no effect, because notice of the meeting, called for that purpose, was not given to members of the advisory board of the league, as required, it is said, by its constitution.

The first ground of attack is clearly untenable. Defendant's predecessor was not elected for a fixed term. His tenure was not during good behavior. The league's constitution provides that the secretaryship shall be filled "by appointment of the executive board on such terms and at such salary as it may from time to time prescribe." The term of all other offices created therein is fixed at one year. The executive board, in electing defendant's predecessor, did not prescribe a definite term, and he therefore held at the board's pleasure. The power to remove the holder of this office is inherent. If there be a fixed term of office removal must be for cause, but otherwise, unless limited by statute or by-law, the power to remove ministerial officers is absolute in the body that elects, subject only to a right of action if there be a breach of a contract of employment. *In re Griffing Iron Co., 63 N. J. L.*

168, 175. Relator insists, in this connection, that the resolution declaring the secretaryship vacant, adopted at the same meeting, prior to defendant's election to the office, was nugatory because the notice did not specify this as one of the purposes of the meeting. But the notice was manifestly not deficient in this respect. It clearly comprehended action that might remove the incumbent from the office. And this, as we have pointed out, was a proper exercise of the authority vested in the executive board.

Relator's second point is likewise groundless. It was not intended that defendant should, nor did he attempt to, function in both offices. He did not hold the offices contemporaneously. He resigned the presidency immediately upon his election to the secretaryship, and before assuming the latter office. It was manifestly not essential that defendant resign the presidency in order to be an eligible candidate for the secretariat. This is not a *sine qua non* of the statute or of the league's constitution. Assuming that these offices are incompatible, defendant was not ineligible for election to the office in question. The rule at common law was that upon the acceptance of another and incompatible office, the first becomes vacant. And this is likewise the rule where the contemporaneous holding of two offices is prohibited by constitution or statute. The acceptance of the second office *ipso facto* vacates the first. *Oliver* v. *Jersey City,* 63 *N. J. L.* 634; *Lofland* v. *Hilton,* 80 *Id.* 528; *Wescott, Attorney-General,* v. *Scull,* 87 *Id.* 410, 417; *State* v. *Thompson,* 20 *Id.* 689. Here the incumbent of the presidency was not, either by statute or the league's constitution, disqualified as a candidate for the secretaryship. The case relied upon by relator, *Bogle* v. *Woods,* 10 *N. J. Mis. R.* 858; 161 *Atl. Rep.* 357, is not in point. There the director of revenue and finance of a commission-governed city was appointed director of public affairs and public safety, and it was held that this was in contravention of the provisions of the Commission Government act. The act was interpreted as creating a disqualification.

The third ground advanced is also without substance. It was not requisite to the validity of the election that notice thereof be given to the members of the advisory board. The

authority to select a secretary was vested in the executive board exclusively. Article 4, section 2 (d), of the constitution provides that the office of executive secretary "shall be filled by appointment of the executive board." Article 8 creates the advisory board, and provides that it shall consist of "present and former municipal officials, and other persons selected *on account of their interest in the objects of this organization.*" This article provides that the advisory board shall meet on the call of the president of the league, or of five of its own members, "to consider any matter for recommendation to the executive board," and that its members shall receive notice of all meetings of the executive board, "at which they shall be entitled to participate in the *discussion of all questions,* but without the right to vote." This provision, fairly and reasonably interpreted, limits the participation of its members, in the meetings of the executive board, to the discussion of questions of policy relating to municipal action, administration and problems, and the advancement of the common interest and welfare of the member municipalities, and the pursuit of the aims and objects within the scope and purview of the statutory franchise. These provisions do not evince a purpose to give the members of the advisory board a voice in the selection of its officers, either in an advisory capacity or otherwise. The power of selection is vested in the executive board solely. Defendant is therefore entitled to judgment.

Judgment for defendant, with costs.